# EXHIBIT A

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**
------------------------------------------------------------------------x

**DAVID BINYARD, RICKY B. DAVIS,**
**TYRONE TAYLOR, Individually and on behalf**                    Index No.
**of a class of similarly situated persons,**

                                    **Plaintiffs,**                    **SUMMONS**

           -against-
                                                                 **Plaintiffs Demand**
                                                                 **a Trial by Jury**
**NEW YORK POLICE DEPARTMENT,  and**
**THE CITY OF NEW YORK, and DANIEL GILLIGAN,**
**individually. and VARTAN KHACHADURIAN,**
**individually,**
                                    **Defendants.**
------------------------------------------------------------------------x

**TO THE ABOVE NAMED DEFENDANTS:**

           **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and

to serve a copy of your answer on the plaintiff's attorneys within 20 days after the service

of this summons, exclusive of the day of service of this summons, or within 30 days after

service of this summons is complete if this summons is not personally delivered to you

within the State of New York.

           In case of your failure to answer this summons, a judgment by default will be

taken against you for the relief demanded in the complaint, together with the costs of this

action.

Dated: May 28 , 2015
           New York, New York                    LEVINE & BLIT, PLLC

                                                 Russell S. Moriarty, Esq.
                                                 Levine & Blit, PLLC
                                                 *Attorneys for Plaintiff*
                                                 350 Fifth Avenue, Suite 3601
                                                 New York, NY 10118
                                                 Phone: (212) 967-3000
                                                 Fax:    (212) 967-3010

[1]

To:

New York Police Department
The City of New York
Daniel Gilligan
Vartan Khachadurian

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------------------x
DAVID BINYARD, RICKY B. DAVIS,
TYRONE TAYLOR, Individually and on behalf          Index No.
of a class of similarly situated persons,

               **Plaintiffs,**          **COMPLAINT**

    -against-

                                              **Plaintiffs Demand**
NEW YORK POLICE DEPARTMENT,  and          **a Trial by Jury**
THE CITY OF NEW YORK, and DANIEL GILLIGAN,
individually. and VARTAN KHACHADURIAN,
individually,
               **Defendants.**
----------------------------------------------------------------------------x

       Plaintiffs, DAVID BINYARD ("Binyard" or "plaintiff"), RICKY B. DAVIS ("Davis" or

"plaintiff"), and TYRONE TAYLOR ("Taylor" or "plaintiff") (collectively, "plaintiffs" or

"Named Plaintiffs"), individually and on behalf of a class of similarly situated persons, ("the

Class"), by and through their attorneys, LEVINE & BLIT, PLLC, as and for their Complaint

against defendants, NEW YORK POLICE DEPARTMENT ("NYPD" or "defendant"), and THE

CITY OF NEW YORK ("City" or "defendant"), and DANIEL GILLIGAN ("Gilligan" or

"Defendant") and VARTAN KHACHADURIAN ("Khachadurian" or "defendant") (collectively

"defendants") hereby allege as follows:


## NATURE OF THE ACTION

   1.       Often overlooked, the work of NYPD's 'Fleet Service Division' is vital to

ensuring that the approximately 34,000 uniformed members of NYPD have the means to

protect the millions of people within the City of New York.

2.      The Fleet service Division is tasked with the maintenance and repair of the tens of thousands of NYPD vehicles which are directly responsible for emergency response, patrol and transport, among other things.

3.      Employees of the Fleet Services Division are divided into several categories, including 'Auto Service Workers' which include lower paid workers whose duties first and foremost are to assist Mechanics, and 'Mechanics', who are much better compensated and have the stated duties of performing actual 'complex' repair and maintenance work on the NYPD fleet.

4.      Due to custom and unwritten policy of defendants, white employees are routinely granted the more esteemed and significantly higher job of Mechanic, while black and African American workers are customarily relegated to the lower paying, subservient position of Auto Service Worker.

5.      The named plaintiffs in this action are three highly qualified, intelligent, skilled and experienced black, African American employees of NYPD.

6.      For years, plaintiffs and the proposed class in this action have been victims of systemic discrimination based on race and color.  Toiling in lower paying and subservient positions as Auto Service Workers, the named plaintiffs in this action have experienced firsthand lesser experienced and lesser performing white workers be rewarded with jobs, and other valuable work opportunities, that they and their fellow black and African American colleagues deserve.  Plaintiffs have also been subjected to on-the-job harassment and degrading treatment due to their race and color.

7.      Accordingly, this civil action is brought to redress Defendants' unlawful and discriminatory employment practices committed against Plaintiffs and the Class,

including Defendants' denial of employment opportunities to Plaintiffs and the Class, and further continuous acts of discrimination and harassment of plaintiffs and the Class, due to their race and/or color, in violation of the New York State Human Rights Law, codified as New York Executive Law § 290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, codified as New York Administrative Code § 8-101 *et seq.* ("NYCHRL"), 42 U.S.C. § 1981 (Section 1981) and 42 U.S.C. § 1983 (Section 1983).

8.     Plaintiffs seek for themselves, and all similarly situated employees, equitable and legal relief in the form of: declaratory relief; injunctive relief; monetary damages for past and future economic losses; compensatory damages, including, but not limited to, emotional distress, mental anguish, humiliation, and embarrassment; punitive damages; attorney's fees; costs of this action; and any such other and further relief deemed just and equitable.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over this matter pursuant to CPLR § 301.

10.     Venue is proper in this Court pursuant to CPLR § 503.

## THE PARTIES

### The Named Plaintiffs

11.     Plaintiff BINYARD, a resident of Queens County in the State of New York, is a black, African American male, who has been employed by defendants for over thirteen (13) years, mainly at the 53-13 58th St., Maspeth, NY, facility of NYPD, as an Auto Service Worker.

3

12.     Plaintiff DAVIS, a resident of Kings County in the State of New York, is a black, African American male, who has been employed by defendants for over thirteen (13) years, mainly at the 53-13 58th St., Maspeth, NY, facility of NYPD, as an Auto Service Worker.

13.     Plaintiff TAYLOR, a resident of Kings County in the State of New York, is a black, African American male, who has been employed by defendants for over nine (9) years, mainly at the 53-13 58th St., Maspeth, NY, facility of NYPD, as an Auto Service Worker.

14.     Plaintiffs were "employees" of Defendants as defined by all applicable statutes.

15.     At all times relevant to this action, Plaintiffs were qualified to hold a position of employment with Defendant through their knowledge, education, training, experience, qualifications, and/or satisfactory performance at NYPD and prior places of employment.

**The Defendants**

16.     Defendant NYPD is the largest municipal police force in the country, with its headquarters located at 1 Police Plaza, New York, NY 10007. NYPD is a Department of defendant CITY.

17.     At all times relevant to this action, Defendant NYPD maintained an employment relationship with four or more individuals and is an "employer" as defined by all applicable statutes.

18.     At all times relevant to this action, Defendant NYPD had knowledge and was aware that Plaintiffs are black and African American.

4

19.     Defendant City is a municipal corporation duly incorporated and existing pursuant to the laws of the State of New York, and having its principal offices at City Hall, New York, NY 10007.

20.     At all times relevant to this action, Defendant City maintained an employment relationship with four or more individuals and is an "employer" as defined by all applicable statutes.

21.     At all times relevant to this action, Defendant City maintained an employment relationship with four or more individuals and is an "employer" as defined by all applicable statutes.

22.     Defendant Gilligan, a white male, served as Supervisor of Mechanics of the Fleet Services Division for defendants NYPD and City. Upon information and belief, Gilligan resides in New York.

23.     At all time relevant to this action, defendant Gilligan held a supervisory position over the plaintiff, and was in a position of authority to undertake or recommend tangible employment decisions and/or control the terms and conditions of plaintiffs' employment with defendants NYPD and City.

24.     Defendant Khachadurian, a light skinned, Indian male, served as Supervisor of Mechanics of the Fleet Services Division for defendants NYPD and City. Upon information and belief, Khachadurian resides in New York.

25.     At all time relevant to this action, defendant Khachadurian held a supervisory position over the plaintiff, and was in a position of authority to undertake or recommend tangible employment decisions and/or control the terms and conditions of plaintiffs' employment with defendants NYPD and City.

## CLASS ACTION ALLEGATIONS

26.     Plaintiffs bring this class action pursuant to New York Civil Practice § 901 seeking injunctive and monetary relief for the unlawful employment practices used by Defendants against Plaintiffs and other similarly situated employees ("the Class") who were unlawfully denied employment opportunities and harassed in the workplace due their color and/or race.

### *Facts as to Named Plaintiffs*

27.     At all times relevant to this complaint, Plaintiffs had been employed at by NYPD's Fleet Services Division.

28.     At all times relevant to this complaint, Gilligan and Khachadurian have served as Supervisor of Mechanics of the Fleet Services Division and, as such, as a supervisor over plaintiffs.

29.     The facilities in which the named Plaintiffs work, alone, employ between thirty (30) and fifty (50) Mechanics, only approximately two of which are black and/or African American, while the vast majority are white.

30.     Named Plaintiffs Binyard, Davis and Taylor have each been working for defendants for between nine (9) and thirteen (13) years, and each had extensive experience in the auto service industry prior to working for NYPD. Accordingly, no legitimate, non discriminatory reason exists for the discriminatory acts perpetrated by defendants against plaintiffs.

31.     Named Plaintiffs Binyard, Davis and Taylor each have significant technical expertise, and each is well qualifies to perform their duties as Auto Service Workers, and

as Mechanics if the opportunities were justly afforded. Accordingly, no legitimate, non discriminatory reason exists for the discriminatory acts perpetrated by defendants against plaintiffs.

32.     Named Plaintiffs Binyard, Davis and Taylor each have excellent disciplinary histories in their respective long tenures with defendants. Accordingly, no legitimate, non discriminatory reason exists for the discriminatory acts perpetrated by defendants against plaintiffs.

33.     Named Plaintiffs Binyard, Davis and Taylor, throughout their respective long tenures with defendants, each have a history of excellent performance evaluations as Auto Service Workers at the 'Meets' or 'Exceeds" category. Accordingly, no legitimate, non discriminatory reason exists for the discriminatory acts perpetrated by defendants against plaintiffs.

34.     Named Plaintiffs Binyard, Davis and Taylor regularly, on a daily basis, perform duties prescribed or designated by defendants to Mechanics, rather than Auto Service Workers, yet have not been elevated by defendants to the position of Mechanic, which is largely reserved for defendants' white workers.

35.     Despite their thirty-plus (30+) years of combined experience, neither one of the Named Plaintiffs have been elevated to the Mechanic position due to their color and race.

36.     The difference in pay that plaintiffs earn as Auto Service Workers versus what they should make as Mechanics for defendants is significant. Named Plaintiffs Binyard, Davis and Taylor each earn salaries of approximately $40,000 per year as Auto Service Workers from defendants. Upon information and belief, defendants pay Mechanics, who are largely white, approximately $80,000.

37.     Named Plaintiffs Binyard, Davis and Taylor have applied numerous times for Mechanic positions, with defendants, but each time have gotten rejected due to their race and color.

38.     In all instances in which the Named Plaintiff applied for Mechanic positions but were rejected, white Auto Service Workers were elevated to the Mechanic position over the Named Plaintiffs.  These white workers were less experienced and less qualified than Named Plaintiffs.

39.     The latest instance in which Named plaintiffs applied for Mechanic Positions occurred on or about February 27, 2105.

40.     In or about April, 2015, Named Plaintiffs were informed that their applications for Mechanic position s were denied.   In this latest attempt, Named Plaintiffs were denied promotions to Mechanic due to their race and color.

41.     In this latest attempt, Named Plaintiffs were denied promotions to Mechanic due to their race and color.

42.     Again, in this latest attempt, Mechanic positions went largely to white workers, as the systemic discrimination in the Fleet Services Division continued.

43.     Gilligan and Khachadurian, as Supervisors, are largely responsible for denying the named Plaintiffs' promotion to Mechanic, due to their race and color, and for promoting and/or appointing mainly white mechanics.

44.     In addition to the egregious failure to promote, the Named Plaintiff  are refused significant additional workplace opportunities.

45.     Specifically, at all times relevant to this Complaint to the present, Davis and Binyard routinely request available overtime work from their supervisors.  However,

Davis and Binyard are often denied the added benefit and added income of this overtime work by their supervisors, due to their race and color, as such overtime work is routinely given to white mechanics.

46.    The named plaintiffs routinely complain to management and their Union about the discrimination that they are subjected to.

47.    In late, 2014, Davis filed a complaint with the U.S E.E.O.C. in response to the discrimination and harassment that he's been subjected to at work.

48.    Finally, the Named Plaintiffs are routinely subjected to derogatory and harassing treatment at work due to their race and color.

49.    For example, in or around January of 2015, Gilligan, who definitely knows that Davis filed an EEOC complaint and made several complaints of discrimination and harassment called Davis a 'self righteous pr*ck', and 'arrogant', in response to Davis' protected complaints.

50.    The discrimination that the Named Plaintiffs have been subjected to have had an extreme negative impact on their professional goals and growth, and finances, as they have lost significant pay and benefits, and professional opportunities. Additionally, the blatant discriminatory environment to which Named Plaintiffs have been subjected has caused Named Plaintiffs to suffer emotional distress, including anxiety, depression and other symptoms.

## _Facts as to the Class (including Named Plaintiffs)_

51.    This Complaint respectfully incorporates the Facts pertaining to Named Plaintiffs, above, to the Facts to the Class as a whole, in addition to the following.

52.    The vast majority of Mechanics working for defendants are non-black, non-African American workers, though many qualified, black and African American workers are available for such jobs.

53.    For the most part, defendants intentionally refuse to hire/promote black and African American workers to the Mechanic position, as defendants largely reserve such positions for its white workers.

54.    For the most part, defendants intentionally relegate black and African American workers to Auto Service Worker positions, positions which are inferior, subordinate, and lesser paying than the positions afforded to the white mechanics.

55.    Specifically, defendants routinely pass over qualified black and African-American Auto Service Workers for promotion or appointment to Mechanic positions when such positions come available.

56.    Even white Auto Service Workers *with negative disciplinary histories* receive promotions to the Mechanic position, while qualified, well-performing black and African American workers are routinely overlooked.

57.    Notably, defendants pay Mechanics almost two times higher wages than Auto Service Workers. Therefore, the refusal to promote black and African American workers to the Mechanic position has a significant negative financial impact on such workers.

58.    Also, defendants routinely assign black and African-American Auto Service Workers duties designated for Mechanics, rather than duties to merely assist the Mechanics  Still, even though the black and African-American Auto Service Workers regularly carry out 'Mechanic' duties, defendants refuse to elevate the black and African-American Auto Service Workers to the Mechanic Position.

59.     Also, defendants routinely pass over qualified black and African-American Auto Service Workers for overtime opportunities, despite repeated requests by the black and African-American Auto Service Workers for overtime work, and instead afford the vast majority of overtime work to the higher paid white Mechanics.

60.     Finally, defendants routinely subject black and African-American Auto Service Workers to harassment and derogatory treatment in the workplace due to the workers race and/or color

## A CLASS ACTION IS THE SUPERIOR
## METHOD FOR ADJUDICATION

61.     Pursuant to CPLR § 901, the Class ("the Class") consists of all black and/or African American individuals who sought employment with Defendant as Mechanics, and/or who served as Auto Service Workers for defendants, during the relevant time period for statute of limitations purposes.

**Numerosity and Impracticability of Joinder**

62.     The individuals in the Class identified above are so numerous that joinder of all members of the Class is impracticable and management of the case would be complex and difficult.

63.     Moreover, the costs of maintaining separate actions would be prohibitive for the potential class members.

64.     Upon information and belief, dozens of black individuals have held the positions of Auto Service Workers for defendants, but were discriminatorily denied employment opportunities due to their race and color.

**Common Questions of Law and Fact**

65.    Questions of law and fact common to the Class include, but are not limited to the following:

i.    Whether Plaintiffs and other similarly situated individuals ("the Class") were denied employment opportunities by defendants due to their race and/or color;

ii.    Whether members of the Class were qualified to hold employment positions as Mechanics;

iii.    Whether Defendants denied employment to members of the Class because of their race and/or color;

iv.    Whether members of the Class were forced to perform job duties of 'Mechanic', though they were not promoted to Mechanics, nor were they paid as 'Mechanic';

v.    Whether members of the Class were denied opportunities to perform overtime work due to their race and/or color;

vi.    Whether members of the Class were subjected to derogatory and harassing treatment at work due to their race and/or color.

vii.    Whether members of the Class have sustained damages, and if so, the proper measure of damages;

viii.    If a violation of the State and/or City Human Rights Law, and/or Sections § 1981 or § 1983 is found, whether the Class members should be entitled to monetary compensation and injunctive relief; and

ix.  Whether Defendant acted with malice or reckless disregard to members of the Class' civil rights under the New York City Human Rights Law, § 1981 or § 1983, and therefore may recover punitive damages.

**Typicality of Claims and Relief Sought**

66.     The claims of the Named Plaintiffs are typical of the claims of the Class in that the Named Plaintiffs have suffered the same type of damages as other Class members.

67.     Plaintiffs' claims derive from the same unlawful employment policies and practices that give rise to the claims of the other Class members.

68.     Further, plaintiffs' claims are based upon the same legal theory.  To obtain relief for themselves and the Class members, Plaintiffs, as the Class representatives, will establish Defendant's unlawful denial of employment opportunities on the basis of race and color.

69.     Without class certification, the same evidence, issues and questions of law and fact would be subject to re-litigation in a multitude of individual lawsuits with the risk of inconsistent adjudications.

**Fairness and Adequacy of Representation**

70.     The Named Plaintiffs will fairly and adequately protect the interests of the Class.

71.     The interests of the Named Plaintiffs are aligned with those of the Class.

72.     The Named Plaintiffs have no conflicts of interest with the Class.

73.     The Named Plaintiffs are very familiar with the claims giving rise to the lawsuit.

74.     The financial resources to prosecute the action will be advanced by Named Plaintiffs and Plaintiffs' counsel, who is reputable and experienced in prosecution employment discrimination claims.

75.     Further, the relief necessary to remedy the claims of the Named Plaintiffs is the same as that necessary to remedy the claims of the proposed Class members.

**A Class Action is the Most Fair and Efficient Adjudication of the Claims**

76.     Certification of the proposed Class is the most reasonable and efficient means of presenting the evidence and arguments necessary to resolve such questions for the Named Plaintiffs, the Class members, and Defendant, and would likely be subjected to repeated inquiry should the Class members bring individual suits.

77.     By engaging in the alleged unlawful policies and practices affecting the Class generally, final injunctive, declaratory and monetary relief with respect to the Class as a whole is the most appropriate, equitable and efficient way to proceed with the Class's claims.

78.     Questions of law or fact common to the members of the Class, including but not limited to the common questions of law and fact enumerated above, predominate over any questions affecting only the Named Plaintiffs.

79.     For the reasons stated herein, a class action is superior to the other available methods for the fair and efficient adjudication of the controversy, and the Class should be certified under CPLR § 901.

## A FIRST CAUSE OF ACTION AGAINST DEFENDANT
### (Discrimination and Hostile Work Environment Based Upon Race
### in Violation of the NYSHRL)

80.     Plaintiffs and the Class repeat, reallege, and reiterate each and every allegation

contained in paragraphs 1 through 78 as if fully set forth herein.

81.     Plaintiffs and the Class are members of a protected class.

82.     Plaintiffs and the Class were qualified for their prospective positions as

Mechanics with Defendants.

83.     Despite Plaintiffs' and the Class' prior experience and qualifications, Defendants,

due to their race, refused to hire Plaintiffs and the Class to work as mechanics, which

constitutes a materially adverse employment action.

84.     Also, due to their race, Defendants also refused to grant plaintiffs and the Class

available overtime work, and instead largely grant overtime work to white mechanics.

85.     Also, due to their race, Defendants also routinely force plaintiffs and the Class to

perform work duties of mechanics, though relegating plaintiffs and the Class to the

inferior and subordinate position of Auto Service Worker.

86.     Finally, due to their race, defendants routinely subject plaintiffs and the Class to

derogatory treatment in the workplace.

87.     As a direct and proximate result of the Defendant's unlawful discriminatory

conduct, Plaintiffs and the Class have suffered, and continue to suffer, economic losses,

including but not limited to back pay, loss of future income, compensation, and other

benefits of employment; severe mental anguish and emotional distress, including but not

limited to, humiliation, embarrassment, stress and anxiety, and emotional pain and

suffering, for which they are entitled to an award of monetary damages and other relief.

## A SECOND CAUSE OF ACTION AGAINST DEFENDANT
### (Discrimination and Hostile Work Environemtn Based Upon Race
### in Violation of the NYCHRL)

88.     Plaintiffs repeat, reallege, and reiterate each and every allegation contained in paragraphs 1 through 85 as if fully set forth herein.

89.     Plaintiffs and the Class are members of a protected class.

90.     Plaintiffs and the Class were qualified for their prospective positions as Mechanics with Defendants.

91.     Despite Plaintiffs' and the Class' prior experience and qualifications, Defendants, due to their race, refused to hire Plaintiffs and the Class to work as mechanics, which constitutes a materially adverse employment action.

92.     Also, due to their race, Defendants also refused to grant plaintiffs and the Class available overtime work, and instead largely grant overtime work to white mechanics.

93.     Also, due to their race, Defendants also routinely force plaintiffs and the Class to perform work duties of mechanics, though relegating plaintiffs and the Class to the inferior and subordinate position of Auto Service Worker.

94.     Finally, due to their race, defendants routinely subject plaintiffs and the Class to derogatory treatment in the workplace.

95.     As a direct and proximate result of the Defendant's unlawful discriminatory conduct, Plaintiffs and the Class have suffered, and continue to suffer, economic losses, including but not limited to back pay, loss of future income, compensation, and other benefits of employment; severe mental anguish and emotional distress, including but not limited to, humiliation, embarrassment, stress and anxiety, and emotional pain and suffering, for which they are entitled to an award of monetary damages and other relief.

16

96.     Defendant's unlawful and discriminatory actions constitute malicious, willful, and wanton violations of the NYCHRL, and were done with malice or reckless disregard for Plaintiffs' and the Class' civil rights, for which Plaintiffs and the Class are entitled to an award of punitive damages.

### A THIRD CAUSE OF ACTION AGAINST DEFENDANT
### (Discrimination and Hostile Work Environment Based Upon Color
### in Violation of the NYSHRL)

97.     Plaintiffs repeat, reallege, and reiterate each and every allegation contained in paragraphs 1 through 94 as if fully set forth herein.

98.     Plaintiffs and the Class are members of a protected class.

99.     Plaintiffs and the Class were qualified for their prospective positions as Mechanics with Defendants.

100.     Despite Plaintiffs' and the Class' prior experience and qualifications, Defendants, due to their color, refused to hire Plaintiffs and the Class to work as mechanics, which constitutes a materially adverse employment action.

101.     Also, due to their color, Defendants also refused to grant plaintiffs and the Class available overtime work, and instead largely grant overtime work to white mechanics.

102.     Also, due to their color, Defendants also routinely force plaintiffs and the Class to perform work duties of mechanics, though relegating plaintiffs and the Class to the inferior and subordinate position of Auto Service Worker.

103.     Finally, due to their color, defendants routinely subject plaintiffs and the Class to derogatory treatment in the workplace.

104.     As a direct and proximate result of the Defendant's unlawful discriminatory conduct, Plaintiffs and the Class have suffered, and continue to suffer, economic losses, including but not limited to back pay, loss of future income, compensation, and other benefits of employment; severe mental anguish and emotional distress, including but not limited to, humiliation, embarrassment, stress and anxiety, and emotional pain and suffering, for which they are entitled to an award of monetary damages and other relief.

## A FOURTH CAUSE OF ACTION AGAINST DEFENDANT
### (Discrimination and Hostile Work Environment Based Upon Color in Violation of the NYCHRL)

105.     Plaintiffs repeat, reallege, and reiterate each and every allegation contained in paragraphs 1 through 102 as if fully set forth herein.

106.     Plaintiffs and the Class are members of a protected class.

107.     Plaintiffs and the Class were qualified for their prospective positions as Mechanics with Defendants.

108.     Despite Plaintiffs' and the Class' prior experience and qualifications, Defendants, due to their color, refused to hire Plaintiffs and the Class to work as mechanics, which constitutes a materially adverse employment action.

109.     Also, due to their color, Defendants also refused to grant plaintiffs and the Class available overtime work, and instead largely grant overtime work to white mechanics.

110.     Also, due to their color, Defendants also routinely force plaintiffs and the Class to perform work duties of mechanics, though relegating plaintiffs and the Class to the inferior and subordinate position of Auto Service Worker.

111.     Finally, due to their color, defendants routinely subject plaintiffs and the Class to derogatory treatment in the workplace.

112.    As a direct and proximate result of the Defendant's unlawful discriminatory conduct, Plaintiffs and the Class have suffered, and continue to suffer, economic losses, including but not limited to back pay, loss of future income, compensation, and other benefits of employment; severe mental anguish and emotional distress, including but not limited to, humiliation, embarrassment, stress and anxiety, and emotional pain and suffering, for which they are entitled to an award of monetary damages and other relief.

113.    Defendant's unlawful and discriminatory actions constitute malicious, willful, and wanton violations of the NYCHRL, and were done with malice or reckless disregard for Plaintiffs' and the Class' civil rights, for which Plaintiffs and the Class are entitled to an award of punitive damages.

### A FIFTH CAUSE OF ACTION AGAINST DEFENDANT
### (Discrimination and Hostile Work Environment Based Upon Race and Color
### in Violation of § 1981)

114.    Plaintiffs repeat, reallege, and reiterate each and every allegation contained in paragraphs 1 through 111 as if fully set forth herein.

115.    Plaintiffs and the Class are members of a protected class.

116.    Plaintiffs and the Class were qualified for their prospective positions as Mechanics with Defendants.

117.    Despite Plaintiffs' and the Class' prior experience and qualifications, Defendants, due to their race and color, refused to hire Plaintiffs and the Class to work as mechanics, which constitutes a materially adverse employment action.

118.    Also, due to their race and color, Defendants also refused to grant plaintiffs and the Class available overtime work, and instead largely grant overtime work to white mechanics.

19

119.    Also, due to their race and color, Defendants also routinely force plaintiffs and the Class to perform work duties of mechanics, though relegating plaintiffs and the Class to the inferior and subordinate position of Auto Service Worker.

120.    Finally, due to their race and color, defendants routinely subject plaintiffs and the Class to derogatory treatment in the workplace.

121.    Defendants' discriminatory and hostile actions versus plaintiffs and the Class violate the Civil Rights Act of 1866 (42 U.S.C. § 1981) as amended.

122.    As a direct and proximate result of the Defendant's unlawful discriminatory conduct, Plaintiffs and the Class have suffered, and continue to suffer, economic losses, including but not limited to back pay, loss of future income, compensation, and other benefits of employment; severe mental anguish and emotional distress, including but not limited to, humiliation, embarrassment, stress and anxiety, and emotional pain and suffering, for which they are entitled to an award of monetary damages and other relief.

123.    Defendant's unlawful and discriminatory actions constitute malicious, willful, and wanton violations of the § 1981, and were done with malice or reckless disregard for Plaintiffs' and the Class' civil rights, for which Plaintiffs and the Class are entitled to an award of punitive damages.

### A SIXTH CAUSE OF ACTION AGAINST DEFENDANT
**(Discrimination and Hostile Work Environment Based Upon Race and Color in Violation of § 1983)**

124.    Plaintiffs repeat, reallege, and reiterate each and every allegation contained in paragraphs 1 through 121 as if fully set forth herein.

125.    Plaintiffs and the Class are members of a protected class.

126.     Plaintiffs and the Class were qualified for their prospective positions as Mechanics with Defendants.

127.     Despite Plaintiffs' and the Class' prior experience and qualifications, Defendants, due to their race and color, refused to hire Plaintiffs and the Class to work as mechanics, which constitutes a materially adverse employment action.

128.     These actions by defendants to refuse promotion opportunities to black and African American auto service workers are pursuant ot unwritten policy and custom of defendants, who routinely promotes largely white workers to the position of Mechanic.

129.     Also, due to their race and color, Defendants also refused to grant plaintiffs and the Class available overtime work, and instead largely grant overtime work to white mechanics.

130.     Also, due to their race and color, Defendants also routinely force plaintiffs and the Class to perform work duties of mechanics, though relegating plaintiffs and the Class to the inferior and subordinate position of Auto Service Worker.

131.     Finally, due to their race and color, defendants routinely subject plaintiffs and the Class to derogatory treatment in the workplace.

132.     The totality of defendants' discriminatory actions against plaintiffs and the Class occurred under color of state law, as they are pursuant to policy and custom to favor white workers over black and African American workers.

133.     Defendants qualify as 'persons' under 42 U.S.C. § 1983.

134.     Plaintiffs and the Class have been denied federally protected rights to due process and rights to a discrimination free workplace by defendants, due to their race and color.

135.     As a direct and proximate result of the Defendant's unlawful discriminatory conduct, Plaintiffs and the Class have suffered, and continue to suffer, economic losses, including but not limited to back pay, loss of future income, compensation, and other benefits of employment; severe mental anguish and emotional distress, including but not limited to, humiliation, embarrassment, stress and anxiety, and emotional pain and suffering, for which they are entitled to an award of monetary damages and other relief.

136.     Defendant's unlawful and discriminatory actions constitute malicious, willful, and wanton violations of the § 1983, and were done with malice or reckless disregard for Plaintiffs' and the Class' civil rights, for which Plaintiffs and the Class are entitled to an award of punitive damages.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court enter a judgment against Defendant containing the following relief:

(a)     An Order declaring that Defendant has violated the anti-discrimination provisions of the NYSHRL and the NYCHRL, Sections 1981 and 1983;

(b)     An Order enjoining the Defendant from engaging in the unlawful conduct alleged herein;

(c)     An Order awarding monetary damages to Plaintiffs and the Class for their economic losses, including, but not limited to, back pay, front pay, the value of other benefits of employment;

(d)     An Order awarding monetary damages to Plaintiffs and the Class to compensate them for the emotional distress, mental anguish, humiliation, and embarrassment, suffered as a result of Defendant's unlawful actions;

(e)    An Order awarding punitive damages and liquidated damages to Plaintiffs and the Class in an amount to be determined by the trier of fact;

(f)    An Order awarding Plaintiffs and the Class their reasonable attorney's fees;

(g)    An Order awarding Plaintiffs and the Class their costs of this action; and

(h)    Any such other or further relief deemed just and equitable.

Dated:    May 20, 2015
          New York, New York

                              LEVINE & BLIT, PLLC


                              Russell S. Moriarty, Esq.
                              *Attorneys for Plaintiffs*
                              350 Fifth Avenue, Suite 3601
                              New York, NY 10118
                              Tel. (212) 967-3000
                              rmoriarty@levineblit.com

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-----------------------------------------------------------------------x

DAVID BINYARD, RICKY B. DAVIS,
TYRONE TAYLOR, Individually and on behalf                    Index No.
of a class of similarly situated persons,

Plaintiffs,

-against-

NEW YORK POLICE DEPARTMENT,  and
THE CITY OF NEW YORK, and DANIEL GILLIGAN,
individually. and VARTAN KHACHADURIAN,
individually,

Defendants.

-----------------------------------------------------------------------x

---

# SUMMONS & COMPLAINT

---

**LEVINE & BLIT, PLLC**
*Attorney(s) for Plaintiffs*
DAVID BINYARD
RICKY B. DAVIS
TYRONE TAYLOR
350 Fifth Avenue - Suite 3601
New York, New York 10118
Tel:  (212) 967-3000
Fax:  (212) 967-3010

---

To:

New York Police Department
The City of New York
Daniel Gilligan
Vartan Khachadurian